

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 02, 2024.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 22-50591-CAG** |
| **CHRIS PETTIT & ASSOCIATES, P.C.** | § | |
| | § | **CASE NO. 22-50592-CAG** |
| **CHRISTOPHER JOHN PETTIT** | § | |
| | § | **CHAPTER 11 PROCEEDINGS** |
| **Jointly Administered Debtors.**[1] | § | **(Jointly Administered Under** |
| | § | **Case No. 22-50591-CAG)** |
| | § | |
| | § | |

### ORDER AUTHORIZING AND APPROVING (A) THE SALE OF REAL ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), (F), AND (M); AND (B) GRANTING RELATED RELIEF

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's Social Security Number or Federal Tax Identification Number, as applicable, are: Chris Pettit & Associates, P.C. (1267), and Christopher John Pettit (9429).

Came on for consideration the motion (the "Motion")[2] of Eric Terry, chapter 11 trustee (the "Trustee") in the above-captioned bankruptcy cases ("Cases") for an order pursuant to Sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the Western District of Texas (the "Local Rules") (i) authorizing and approving (a) bid procedures for the sale of certain real estate and personal property as set forth in the Steves Contract (the "Property") owned by Trustee ("Seller"), including approval of stalking horse bidder, (b) establishing a date for an auction if the Trustee receives one or more timely and acceptable Qualified Bids (the "Auction") and a final hearing (the "Sale Hearing") to approve the sale of the Property (the "Sale Transaction"), (c) approving the form and manner of notice of the Auction and Sale Hearing, and (d) related relief and an (ii) order (a) approving the sale of the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 105 and 363 of the Bankruptcy Code, and (b) granting related relied, all as more fully described in the Motion; and the Court having entered an order on March 19, 2024 at ECF No. 1223 (the "Bid Procedures Order" and Exhibit 1 attached thereto, the "Bid Procedures"); and the Auction having been set for April 1, 2024 in accordance with the Bid Procedures Order; and only the Purchaser(s) (as defined herein) having been deemed a Qualified Bidder(s) and having submitted a Qualified Bid(s) for the Property; and no other Qualified Bidders having submitted competing bids for the Property; and the Trustee and the Court having determined that the Auction was unnecessary and that Purchaser represents the highest and otherwise best bid for the Property; and a final hearing (the "Sale Hearing") to approve the sale of

---

[2] All Capitalized terms not otherwise defined herein shall have the same meanings ascribed in the Motion and its exhibits.

the Property (the "Sale Transaction") having been held on April 1, 2024 to consider approval of the Sales Contract (as defined herein); and the Court having determined that notice of the Motion was adequate and sufficient; and all parties having been afforded due process and an opportunity to be heard with respect to the Motion and all the relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections and responsive pleadings filed in connection with the Motion, if any; and (iii) the representations of counsel made and the evidence proffered at the Sale Hearing; and the Sale Hearing having been held, and after due deliberation and sufficient case appearing therefore, hereby finds and determines that:

A.  **Jurisdiction and Venue**. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and that venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.  **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.  **Statutory Predicates**. The statutory predicates for relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

D.  **Notice**. The notice of the Motion on the Sale Notice Parties (as defined in the Bid Procedures Order) and the Sale Notice and the proposed entry of this Order to the Sale Notice Parties was adequate and sufficient under the circumstances of these Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and the Bid Procedures Order. With respect to entities whose identities were not reasonably ascertainable by the Trustee, notice was sufficient and reasonably calculated under the

22-50591-cag  Doc#1252  Filed 04/02/24  Entered 04/02/24 11:27:48  Main Document Pg 4 of 39

circumstances to reach such entities. Accordingly, no further notice of, or hearing on, the Motion, the Sale Hearing, the Sale Contract, the Sale Transaction, or this Order is necessary or required.

E.      **Compliance with Bid Procedures Order**. As demonstrated by (i) evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has conducted a fair and open sale process in a manner reasonably calculated to produce the highest and otherwise best offer for the Property in compliance with the Bid Procedures Order. The Bid Procedures were substantively and procedurally fair to all parties. The sale process, Bid Procedures, were non-collusive, duly noticed, and afforded a full, fair, and reasonable opportunity for any Person to make a higher and otherwise better offer to purchase the Property.

F.      **Successful Bidder**. The Purchaser offered and the Trustee accepted, the highest and best Qualified Bid (as defined in the Bid Procedures), which is a cash bid in the amount of $2,300,000.00 (the "Purchase Price"), subject to adjustment as set forth in that certain Sales Contract, dated as of February 24, 2024 (as amended, supplemented, or otherwise modified from time to time, including all Exhibits, Schedules, and Appendices thereto (the "Sales Contract," attached hereto as **Exhibit 1**) by and among the Trustee and Edward Galt Steves (the "Purchaser"). The Purchaser is approved as the Successful Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the Sales Contract by and among the Purchaser and the Trustee.

G.      **Back-Up Bidder**. The Bid Procedures provided that other bidders had an opportunity to submit bids but no parties submitted any competing bids. At the Sale Hearing, the Court once again solicited additional bids but no parties indicated any interest in submitting additional bids. The Trustee did not designate any Back-Up Bidder.

ORDER APPROVING THE SALE OF 555 ARGYLE AVE.                    PAGE 4 OF 19

H.    **Due Authority**. The Trustee has approved the Sales Contract and the consummation of the Sale Transaction, and the Trustee's sale of the Property to the Purchaser has been duly and validly authorized by all necessary corporate or other entity action. The Trustee has full power and authority to execute the Sales Contract and all other documents contemplated thereby and to consummate the Sale Transaction. No consents or approvals, other than those expressly provided for in the Sales Contract, are required for the Trustee to consummate the Sale Transaction.

I.    **Business Justification**. Approval of the Sales Contract and consummation of the Sale Transaction is in the best interest of the Debtors, their estates, creditors, and other parties in interest. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, the fact that the Sales Contract and the closing thereon will present the best opportunity to realize the value of the Property and avoid decline and devaluation of the Property.

J.    The consideration to be provided by the Purchaser pursuant to the Sales Contract: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Property; (iii) will provide a greater recovery for the estates' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors' estates and the indirect benefits of the Sale Transaction for the Debtors' creditors. The Trustee's determination that the Sales Contract constitutes the highest and otherwise best offer for the Property is a result of due deliberation by the Trustee and constitutes a valid and sound exercise of the Trustee's business judgment. Entry of an order approving the Sale Motion,

Sales Contract, and the Sale Transaction is a necessary condition precedent to the Purchaser consummating the Sale Transaction.

K. **Arm's-Length Sale**. The Sales Contract was negotiated, proposed, and entered into by the Trustee and the Purchaser without collusion, in good faith, and was the result of arm's-length bargaining between the parties represented by independent counsel. The Trustee and the Purchaser have not engaged in any conduct that would cause or permit the Sales Contract to be avoided under section 363(n) of the Bankruptcy Code. The Purchaser is not an "insider" or "Affiliate" of the Trustee or Debtors, as such terms are defined in the Bankruptcy Code.

L. **Good Faith Purchaser**. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. The Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction. The Purchaser has proceeded in good faith in all respects in that, *inter alia*: (i) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Property; (ii) the Purchaser complied with the provisions of the Bid Procedures Order; (iii) the Purchaser's bid was subjected to the competitive bid procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers exists among the Purchaser, the Seller, and the Debtors; and (v) all payments to be made by the Purchaser and all other material agreements or arrangements entered into by the Purchaser and the Seller in connection with the Sale Transaction have been disclosed.

M. **Legal, Valid, and Binding Transfer**. The Trustee is the sole and lawful owner of the Property, or otherwise has a valid, enforceable property interest in such, and title to the Property, within the meaning of section 541(a) of the Bankruptcy Code. The Trustee has all rights, title, and interest in the Property required to transfer and convey the Property to the Purchaser. The

transfer of the Property to the Purchaser will be a legal, valid, and effective transfer of the Property and, except as provided in the Sales Contract, will vest in the Purchaser with all rights, title, and interest of the Trustee to the Property free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances, and other interests of any Governmental Authority, as defined in the Sales Contract) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract. The sale of the Property shall also be free and clear of those liens, claims, encumbrances, and other interests that purport to give any party a right or option to effectuate any forfeiture, modification, or termination of the Trustee's interests in the Property, or similar rights.

N.     The Sales Contract is a valid and binding contract between the Trustee and the Purchaser, which is and shall be enforceable according to its terms.

O.     **<u>Free and Clear</u>**. The Purchaser would not have entered into the Sales Contract and would not consummate the Sale Transaction, thus adversely affecting the Debtors' estates and their creditors, if the transfer of the Property to the Purchaser was not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any such lien, claim, encumbrance, or other interest. A sale of the Property other than one free and clear of any liens, claims, encumbrance, or other interests, would adversely impact the estates and would yield substantially less value for the estates.

P.     Subject to the provisions of this Order and except as may be specifically provided in the Sales Contract, the Trustee may sell the Property free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with a lien, claim, encumbrance, or other interest in the Property to be

transferred on the date the Sale Transaction is consummated (the "<u>Closing Date</u>"): (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or other interest; (iii) holds a claim that is subject to bona fide dispute; or (iv) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of liens, claims, encumbrances, and other interests who did not object to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Q.     **Not a Sub Rosa Plan**. The Sales Contract and Sale Transaction do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sales Contract and the Sale Transaction neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a plan for the Debtors.

R.     **No Fraudulent Transfer**. The Sales Contract was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia. The Trustee and the Purchaser are not entering into the Sale Transaction fraudulently.

S.     **No Successor Liability**. The Purchaser (i) is not, and shall not be, considered a successor in interest to the Debtors, (ii) has not, *de facto* or otherwise, merged with or into the Debtors, (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and (iv) is not holding themselves out to the public as a continuation of the Debtors. Except as otherwise specifically provided in the Sales Contract, the transfer of the Property to the Purchaser does not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under

the laws of the United States or any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust, successor, transferee, or assignee liability.

T.  **Prompt Consummation**. Time is of the essence in consummating the Sale Transaction. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Sales Contract, including, without limitation, the Sale Transaction.

U.  **Good and Sufficient Cause**. There is other good and sufficient cause to grant the relief requested in the Motion and to approve the Sales Contract and the Sale Transaction.

V.  **Legal and Factual Bases**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of fact are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.  The Motion is **GRANTED** to the extent set forth herein.

2.  The notice of the Sale Motion and the Sale Hearing are approved as being fair, reasonable, and adequate under the circumstances, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

3.  All objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, settled or ruled upon as announced to the Court as the Bid Procedures Hearing

are denied and overruled in their entirety on the merits, with prejudice. Wells Fargo's objection [ECF No. 1239] was resolved.

## Approval of Free and Clear Sale of the Property

4.      The Sales Contract, all exhibits and schedules thereto, and all of the terms and conditions thereof are hereby approved. The Trustee shall maintain final versions of the Sales Contract and all other ancillary documents in his records upon closing the Sale Transaction.

5.      Pursuant to sections 105 and 363 of the Bankruptcy Code, the Trustee is authorized to (i) execute, deliver, and perform under, consummate, and implement the Sales Contract and the Sale Transaction together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the Sales Contract and the Sale Transaction and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sales Contract and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Purchaser which are consistent with the Sales Contract and the Sale Transaction.

6.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing Date: (i) the transfer of the Property to the Purchaser pursuant to the Sales Contract shall constitute a legal, valid, and effective transfer of the Property and shall vest the Purchaser with all rights, title, and interest in and to the Property; (ii) the Property shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority, any claims or assertions based on any theory of successor or transferee liability, and any restriction on the use, transfer, receipt of income, or other exercise of

any attributes of ownership of the Property) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract; and (iii) all Persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against Purchaser with respect to any such liens, claims, encumbrances, and other interests (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority, any claims or assertions based on any theory of successor or transferee liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property).

7.      All liens, claims, encumbrances, and other interests shall attach to the net proceeds of the Sale Transaction with the same nature, validity, and priority as such liens, claims, encumbrances, or other interests encumbered by the Property prior to the proposed sale.

8.      The ad valorem tax lien for tax years 2021, 2022, and 2023 pertaining to the Property shall attach to sales proceeds and the closing agent shall pay all ad valorem tax debt owed incident to the Property immediately upon closing and prior to any disbursement of proceeds to any other person or entity.

9.      The ad valorem taxes for years 2024 pertaining to the Property shall be prorated in accordance with the Sales Contract, and if not paid in full at closing, shall thereafter be assumed by and the responsibility and liability of the Purchaser to pay when due, and the years 2021, 2022,2023, and 2024 ad valorem tax lien shall be retained against the Property until said taxes are paid in full.

10.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Trustee's interest in the Property or a bill of sale transferring good and marketable title in the Property.

11.     Pursuant to the Sales Contract and this Order, the transfer and assignment of the Property shall be effectuated on the terms set forth therein and herein, and shall not be restricted or prohibited, notwithstanding any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Trustee's transfer, sale, vesting, assumption, and/or assignment of the Property.

12.     This Order is and shall be effective as a determination that all liens, claims, encumbrances, and other interests shall be and are, without further action by any Person, unconditionally released, discharged, and terminated with respect to the Property as of the Closing Date, except as may otherwise be set forth in the Sales Contract.

13.     Except as otherwise provided herein or in the Sales Contract, on the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Property, if any, as such liens, claims, encumbrances, and other interests may have been recorded or may otherwise exist. If any such creditor fails to execute any such documents or instruments or take any such actions, the Trustee is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

## No Successor Liability

14.     The Purchaser and its affiliates, successors, and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Property, to (i) be a successor to the Debtors or their estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and the Purchaser shall have no successor, transferee, or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal,

state, or local antitrust, environmental, successor, tax, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes or other Governmental Authority fees, contributions, or surcharges arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Property prior to the Closing Date. Except as otherwise provided herein or in the Sales Contract, the transfer of the Property to the Purchaser pursuant to the Sales Contract shall not result in the Purchaser or its affiliates, members, or shareholders, or the Property, having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any claim against the Debtors or against any insider of the Debtors, or (ii) any lien, claim, encumbrance, or other interest.

15.     Upon the Closing Date, and except as otherwise expressly provided in the Sales Contract, the Purchaser shall not be liable for any claims against, and liabilities of, the Debtors or any of the Debtors' predecessors or affiliates.

16.     The Purchaser has given substantial consideration under the Sales Contract to the estates. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of liens, claims, encumbrances, and other interests against the Debtors or the Property.

## No Fraudulent Transfer

17.     The consideration provided by the Purchaser under the Sales Contract constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer

Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration provided by the Purchaser for the Property under the Sales Contract is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

### Good Faith

18.     The Sales Contract and the Sale Transaction are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sales Contract and the Sale Transaction shall not affect the validity of the sale of the Property to the Purchaser, unless this Order is duly stayed pending such appeal. The Purchaser is a good faith purchaser of the Property and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

19.     Furthermore, because the Purchaser has acted in good faith, pursuant to Section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity of the transfer of the Property to the Purchaser or any other transactions contemplated by the Contract and/or authorized by this Order, unless the same is stayed pending appeal prior to closing under the Contract. Therefore, Independence Title Company (identified in the Contract) or any other title company is authorized to assist in consummating the sale of the Real Property immediately upon the entry of this Order.

### Additional Provisions

20.     This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Property free and clear of all liens, claims, encumbrances, and other interests (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded liens, claims, encumbrances, and interests against the Property recorded prior to the date of this Order unless the Sales Contract expressly provides that the Purchaser is acquiring the Property subject to such claims, liens, and interests.

21.    Following the Closing Date, no holder of any lien, claim, encumbrance, or other interest on the Property or other party in interest may interfere with the Purchaser's use and enjoyment of the Property based on or related to such lien, claim, encumbrance, or other interest, or any actions that the Trustee or Debtors may take in their chapter 11 cases, and no party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

22.    Except as expressly permitted or otherwise specifically provided by the Sales Contract or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtors or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Property, the ownership or operation of the Property prior to the closing

of the sale, or the sale of the Property are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Property, such persons' or entities' interests.

23.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Sales Contract and the Sale Transaction.

24.     The terms and provisions of the Sales Contract, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Purchaser, and its respective affiliates, successors, and assigns, the Debtors' estates, all creditors of (whether known or unknown), and any affected third parties, notwithstanding the dismissal of the Debtors' cases or conversion of the Debtors' cases to cases under chapter 7, as to which trustee such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The Sales Contract, the Sale Transaction and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 trustee appointed in the Cases. Further, nothing contained in any plan confirmed in these Cases or any order confirming any plan or any other order entered in these cases shall conflict with or derogate from the provisions of the Sales Contract or the terms of this Order.

25.     The Sales Contract and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates.

26.     The failure to include specifically any particular provision of the Sales Contract in this Order shall not diminish or impair the effectiveness of such provision, as it is the intention of the Court that the Sales Contract be authorized and approved in its entirety.

27.     To the extent of any inconsistency between the provisions of this Order, the Sales Contract, and any documents executed in connection therewith, the provisions contained in this Order, the Sales Contract, and any documents executed in connection therewith shall govern, in that order.

28.     Nothing in this Order, the Sales Contract or any document executed in connection with the consummation thereof shall authorize or constitute a transfer of title to property which is excluded from the property of the Debtors' estates pursuant to section 541(b)(4) of the Bankruptcy Code.

29.     The provisions of this Order are non-severable and mutually dependent. Headings are included in this Order for ease of reference only.

30.     The provisions of this Order authorizing the sale and assignment of the Property free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Trustee, the Purchaser, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Purchaser or permitted to survive under the Sales Contract) on or against such Property, if any, shall be deemed released, discharged, and terminated.

31.     From time to time, as and when requested by any Party, each Party to the Sales Contract shall execute and deliver, or cause to be executed and delivered, all such documents and

instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Property.

32.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately and shall not be stayed. Time is of the essence in closing the Sale Transaction and the Trustee and the Purchaser intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

33.     In the event this Order is subject to Appeal, and as a result of such Appeal, the Sale Transaction is thereafter unwound and title to the Property is divested from Purchaser and/or revested in the Trustee (such resulting divestiture, a "Divestiture"), Purchaser shall be entitled to a full and immediate refund of the Purchase Price from Seller in cash. Nothing in this Order or as to this specific provision of this Order shall be considered to affect paragraph 16of this Order nor be in any way be considered with regard to any determination of what is required to secure a stay pending appeal, if a stay pending appeal is sought by any objecting party.

34.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sales Contract, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Property to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order and the Sales Contract; (iii) adjudicate, if necessary, any and all disputes arising out of, concerning, or otherwise relating in any way to the Sale Transaction; and (iv) protect the Purchaser

against any liens, encumbrances, claims, and interests in the Property of any kind or nature whatsoever.

### # # # END OF ORDER # # #

PREPARED AND SUBMITTED BY

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Catherine A. Curtis, Tex. Bar No. 24095708
Mallory A. Davis, Tex. Bar No. 24133121
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, TX 75204
Phone: (214) 692-6200
Fax: (214) 692-6255
Email: jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
catherine.curtis@wickphillips.com
mallory.davis@wickphillips.com

**COUNSEL FOR ERIC TERRY, CHAPTER 11 TRUSTEE**

# **Exhibit 1**

(Sales Contract)

## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)

**TREC**

NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are  Eric Terry, Bankruptcy Trustee for the Estate of Christopher John Pettit
(Seller) and     Edward Galt Steves and/or assigns     (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined
below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the
Property (Property).
   A. **LAND:** Lot    9    Block    25   , CB: 4024 BLK: 25 LOT: 9 GRICE HILL SUBDIVISION
   Addition, City of    Alamo Heights   , County of    Bexar   ,
   Texas, known as    555 Argyle Avenue San Antonio, TX 78209
   (address/zip code), or as described on attached exhibit.
   B. **IMPROVEMENTS:** The house, garage and all other fixtures and improvements attached to the
   above-described real property, including without limitation, the following permanently
   installed and built-in items, if any: all equipment and appliances, valances, screens,
   shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television
   antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units,
   security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water
   softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery,
   landscaping, outdoor cooking equipment, and all other property attached to the above
   described real property.
   C. **ACCESSORIES:** The following described related accessories, if any: window air conditioning
   units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods,
   door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance
   accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i)
   garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes
   Seller's transferable rights to the (i) software and applications used to access and control
   improvements or accessories, and (ii) hardware used solely to control improvements or
   accessories.
   D. **EXCLUSIONS:** The following improvements and accessories will be retained by Seller and
   must be removed prior to delivery of possession: _____
   _____
   E. **RESERVATIONS:** Any reservation for oil, gas, or other minerals, water, timber, or other
   interests is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ................................. $ _____ 2,300,000.00
   The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any
   kind or selling other real property except as disclosed in this contract.
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum,
   ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ...................... $ _____
   C. Sales Price (Sum of A and B) ............................................................. $ _____ 2,300,000.00

4. **LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the
Property. After the Effective Date, Seller may not, without Buyer's consent, create a new
lease, amend any existing lease, or convey any interest in the Property. (Check all applicable
boxes)
   ☐ A. **RESIDENTIAL LEASES:** The Property is subject to one or more residential leases and the
   Addendum Regarding Residential Leases is attached to this contract
   ☐ B. **FIXTURE LEASES:** Fixtures on the Property are subject to one or more fixture leases (for
   example, solar panels, propane tanks, water softener, security system) and the Addendum
   Regarding Fixture Leases is attached to this contract.
   ☐ C. **NATURAL RESOURCE LEASES:** "Natural Resource Lease" means an existing oil and gas,
   mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a
   party.
      ☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.
      ☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall
      provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective
      Date. Buyer may terminate the contract within _____ days after the date the Buyer
      receives all the Natural Resource Leases and the earnest money shall be refunded to
      Buyer.

TXR-1601     Initialed for identification by Buyer  ___  and Seller  ___      TREC NO. 20-17

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

| Contract Concerning | 555 Argyle Avenue San Antonio, TX 78209, Alamo Heights, TX | Page 2 of 11 | 11-07-2022 |
|---|---|---|---|

(Address of Property)

**5. EARNEST MONEY AND TERMINATION OPTION:**

  A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to _____ Laurel Stuckey _____ (Escrow Agent) at 300 Austin Highway Suite 200, San Antonio, TX 78209 (address): $ 100,000 as earnest money and $ 0 as the Option Fee. The earnest money and Option Fee shall be made payable to Escrow Agent and may be paid separately or combined in a single payment.

    (1) Buyer shall deliver additional earnest money of $ _____ to Escrow Agent within _____ days after the Effective Date of this contract.

    (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

    (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

    (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

  B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _0_ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.

  C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

  D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this paragraph 5.

  E. TIME: Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**6. TITLE POLICY AND SURVEY:**

  A. TITLE POLICY: Seller shall furnish to Buyer at ☐ Seller's ☒ Buyer's expense an owner policy of title insurance (Title Policy) issued by _____ Independence Title _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

    (1) Restrictive covenants common to the platted subdivision in which the Property is located.

    (2) The standard printed exception for standby fees, taxes and assessments.

    (3) Liens created as part of the financing described in Paragraph 3.

    (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.

    (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

    (6) The standard printed exception as to marital rights.

    (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

    (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:

      ☐ (i) will not be amended or deleted from the title policy; or

      ☒ (ii) will be amended to read, "shortages in area" at the expense of ☒ Buyer ☐ Seller.

    (9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

  B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

| TXR-1601 | Initialed for identification by Buyer ___ and Seller ___ | TREC NO. 20-17 |
|---|---|---|

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-8E4D-47EDD1E2A545

Contract Concerning     555 Argyle Avenue San Antonio, TX 78209, Alamo Heights, TX     Page 3 of 11   11-07-2022
                                 (Address of Property)

C.   **SURVEY:** The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

☐ (1)   Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date. If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to Closing Date.

☒ (2)   Within __30__ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐ (3)   Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D.   **OBJECTIONS:** Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity:   residential use

Buyer must object the earlier of (i) the Closing Date or (ii) _____5_____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, survey, or Exception Document(s) is delivered to Buyer.

E.   **TITLE NOTICES:**

(1)   **ABSTRACT OR TITLE POLICY:** Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2)   **MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S):** The Property ☐ is ☒ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**

Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request. **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3)   **STATUTORY TAX DISTRICTS:** If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

TXR-1601     Initialed for identification by Buyer _AG1_ and Seller _____     TREC NO. 20-17

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     555 Argyle

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

| Contract Concerning | 555 Argyle Avenue San Antonio, TX 78209, Alamo Heights, TX | Page 4 of 11 | 11-07-2022 |
|---|---|---|---|

(Address of Property)

(4) **TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) **ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) **PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:** Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(8) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) **NOTICE OF WATER LEVEL FLUCTUATIONS:** If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

(11) **REQUIRED NOTICES:** The following notices have been given or are attached to this contract (for example, MUD, WCID, PID notices): _____

7. **PROPERTY CONDITION:**

A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):** (Check one box only)

☐ (1) Buyer has received the Notice.

☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☒ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.

D. **ACCEPTANCE OF PROPERTY CONDITION:** "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

| TXR-1601 | Initialed for identification by Buyer _____ and Seller _____ | TREC NO. 20-17 |
|---|---|---|

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 555 Argyle

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

Contract Concerning    555 Argyle Avenue San Antonio, TX 78209, Alamo Heights, TX    Page 5 of 11    11-07-2022
(Address of Property)

(Check one box only)

[X] (1) Buyer accepts the Property As Is.

[ ] (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

**E. LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

**F. COMPLETION OF REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties with respect to the repairs and treatments to Buyer at closing. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

**G. ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

**H. RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ _____ . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

**8. BROKERS AND SALES AGENTS:**

**A. BROKER OR SALES AGENT DISCLOSURE:** Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____

**B. BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before _____ April 16 _____ , 2024 _____ , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:

(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

(2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

(5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. Transfer fees assessed by a property owners' association are governed by the Addendum for Property Subject to Mandatory Membership in a Property Owners Association. ns

---

TXR-1601     Initialed for identification by Buyer _____ and Seller _____     TREC NO. 20-17

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     555 Argyle

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

| Contract Concerning | 555 Argyle Avenue San Antonio, TX 78209, Alamo Heights, TX | Page 6 of 11 | 11-07-2022 |
|---|---|---|---|
| | (Address of Property) | | |

**10. POSSESSION:**

A. **BUYER'S POSSESSION:** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. **SMART DEVICES:** "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:

(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and

(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.) _____

_____

_____

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money

TXR-1601          Initialed for identification by Buyer _____ and Seller _____          TREC NO. 20-17

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

| Contract Concerning | 555 Argyle Avenue San Antonio, TX 78209, Alamo Heights, TX | Page 7 of 11 | 11-07-2022 |

(Address of Property)

will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**
   A. **ESCROW:** The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.
   B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.
   C. **DEMAND:** Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party. If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.
   D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. **NOTICES:** Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

TXR-1601     Initialed for identification by Buyer _____ and Seller _____     TREC NO. 20-17

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

Contract Concerning      555 Argyle Avenue  San Antonio, TX  78209, Alamo Heights, TX     Page 8 of 11    11-07-2022

                                        (Address of Property)

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

To Buyer at: 501 Grandview             To Seller at: _____

San Antonio, TX 78209                  _____

Phone: _____       Phone: _____

E-mail/Fax: _____    E-mail/Fax: _____

E-mail/Fax: _____    E-mail/Fax: _____
With a copy to Buyer's agent at:           With a copy to Seller's agent at:
molly@corieproperties.com             fred@corieproperties.com

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum          ☐ Seller's Temporary Residential Lease

☐ Seller Financing Addendum             ☐ Short Sale Addendum

☐ Addendum for Property Subject to       ☐ Addendum for Property Located Seaward
     Mandatory Membership in a Property            of the Gulf Intracoastal Waterway
     Owners Association

☐ Buyer's Temporary Residential Lease        ☐ Addendum for Seller's Disclosure of
☐ Loan Assumption Addendum                Information on Lead-based Paint and
☐ Addendum for Sale of Other Property by       Lead-based Paint Hazards as Required by
     Buyer                                    Federal Law

☐ Addendum for Reservation of Oil, Gas       ☐ Addendum for Property in a Propane Gas
     and Other Minerals                  System Service Area

☐ Addendum for "Back-Up" Contract         ☐ Addendum Regarding Residential Leases

☐ Addendum for Coastal Area Property       ☐ Addendum Regarding Fixture Leases

☐ Addendum for Authorizing Hydrostatic      ☐ Addendum containing Notice of Obligation
     Testing                         *ET*      to Pay Improvement District Assessment

☐ Addendum Concerning Right to          ☒ Other (list): Addendum for
     Terminate Due to Lender's Appraisal       555 Argyle Bidder Terms

☐ Environmental Assessment, Threatened       and Conditions
     or Endangered Species and Wetlands
     Addendum

23. **CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's                                Seller's
Attorney is: _____       Attorney is: _____

_____                 _____

Phone: _____       Phone: _____

Fax: _____          Fax: _____

E-mail: _____       E-mail: _____ *ET*

TXR-1601     Initialed for identification by Buyer _LDC_ and Seller _____     TREC NO. 20-17

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     555 Argyle

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

Contract Concerning    555 Argyle Avenue San Antonio, TX 78209, Alamo Heights, TX    Page 9 of 11   11-07-2022
(Address of Property)

**EXECUTED the**   24   **day of**   February   ,   2024   **(Effective Date).**
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

DocuSigned by

Eric Terry

524D26BF89BF4A6

2/24/2024

Buyer Edward Galt Steves and/or assigns        Seller Eric Terry, Bankruptcy Trustee for the Estate of

Buyer                                    Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box .12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-17 This form replaces TREC NO 20-16

TXR-1601                                              TREC NO. 20-17

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     555 Argyle

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

Contract Concerning _____ 555 Argyle Avenue  San Antonio, TX  78209, Alamo Heights, TX _____ Page 10 of 11  11-07-2022
(Address of Property)

## BROKER INFORMATION
### (Print name(s) only. Do not sign)

| | |
|---|---|
| _____ 9 | Compass RE Texas, LLC _____ 9006927 |
| Other Broker Firm          License No. | Listing Broker Firm          License No. |
| | |
| represents [ ] Buyer only as Buyer's agent | represents [x] Seller and Buyer as an intermediary |
| [ ] Seller as Listing Broker's subagent | [ ] Seller only as Seller's agent |
| | Fred Hutt _____ 493420 |
| Associate's Name          License No. | Listing Associate's Name          License No. |
| | |
| Team Name | Team Name |
| | fred@corieproperties.com |
| Associate's Email Address          Phone | Listing Associate's Email Address          Phone |
| | Greg Ward _____ 5921395 |
| Licensed Supervisor of Associate          License No. | Licensed Supervisor of Listing Associate          License No. |
| | 5800 Broadway, Suite 205 |
| Other Broker's Address          Phone | Listing Broker's Office Address          Phone |
| | San Antonio          TX          78209 |
| City          State          Zip | City          State          Zip |
| | Molly Drought _____ 646094 |
| | Selling Associate's Name          License No. |
| | |
| | Team Name |
| | molly@corieproperties.com |
| | Selling Associate's Email Address          Phone |
| | Greg Ward _____ 5921395 |
| | Licensed Supervisor of Selling Associate          License No. |
| | 5800 Broadway Ste 205 |
| | Selling Associate's Office Address |
| | San Antonio          TX          78209 |
| | City          State          Zip |

Disclosure: Pursuant to a previous, separate agreement (such as a MLS offer of compensation or other agreement between brokers), Listing Broker has agreed to pay Other Broker a fee (2.75% _____ ). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

TXR-1601

TREC NO. 20-17

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

Contract Concerning _____ 555 Argyle Avenue  San Antonio, TX  78209, Alamo Heights, TX _____ Page 11 of 11  11-07-2022
(Address of Property)

---

**OPTION FEE RECEIPT**

Receipt of $ _____ N/A _____ (Option Fee) in the form of _____ N/A _____
is acknowledged.

### Independence Title

Escrow Agent Laurel Stuckey                                                         Date

---

**EARNEST MONEY RECEIPT**

Receipt of $ 100,000.00 Earnest Money in the form of DC 20892
is acknowledged.

### Independence Title          TeamStuckey@independencetitle.com  1/26/24 2:27 pm

Escrow Agent                    Received by      Email Address                    Date/Time

Address  300 Austin Hwy., Suite 200          210.237.4660 p
         San Antonio, TX  78209              210.237.4560 f                       Phone

City                      State              Zip                                  Fax

---

**CONTRACT RECEIPT**

Receipt of the Contract is acknowledged.

### Independence Title          TeamStuckey@independencetitle.com  1/26/24

Escrow Agent                    Received by      Email Address                    Date

Address  300 Austin Hwy., Suite 200          210.237.4660 p
         San Antonio, TX  78209              210.237.4560 f                       Phone

City                      State              Zip                                  Fax

---

**ADDITIONAL EARNEST MONEY RECEIPT**

Receipt of $ _____ additional Earnest Money in the form of _____
is acknowledged.

Escrow Agent                    Received by      Email Address                    Date/Time

Address                                                                           Phone

City                      State              Zip                                  Fax

---

TXR-1601                                                              TREC NO. 20-17

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          555 Argyle

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

| | APPROVED BY THE TEXAS REAL ESTATE COMMISSION (TREC) FOR VOLUNTARY USE | 10-10-11 |
|---|---|---|

**EQUAL HOUSING OPPORTUNITY**

## NON-REALTY ITEMS ADDENDUM

### TO CONTRACT CONCERNING THE PROPERTY AT

**555 Argyle Avenue, San Antonio, TX  78209, Alamo Heights, TX**
(Address of Property)

A.  For an additional sum of $ ___5,000___ and other and good valuable consideration, Seller shall convey to Buyer at closing the following personal property (specify each item carefully, include description, model numbers, serial numbers, location, and other information):

**all furniture on property inside and outside on patios**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

B.  Seller represents and warrants that Seller owns the personal property described in Paragraph A free and clear of all encumbrances.

C.  Seller does not warrant or guarantee the condition or future performance of the personal property conveyed by this document.

| | |
|---|---|
| _signature_ | DocuSigned by: *Eric Terry*  2/24/2024 |
| Buyer | Seller |
| **Edward Galt Steves and/or assigns** | Eric Terry, Bankruptcy Trustee for the Estate of Christopher John Pettit |

| | |
|---|---|
| _____ | _____ |
| Buyer | Seller |

This form has been approved by the Texas Real Estate Commission for voluntary use by its licensees. Copies of TREC rules governing real estate brokers, salesperson and real estate inspectors are available at nominal cost from TREC. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 ( HYPERLINK "http://www.trec.texas.gov" http://www.trec.texas.gov)

TREC NO. OP-M

Compass RE, Texas, 5800 Broadway Ste 305 San Antonio TX 78209                                        Phone: 2104871161      Fax:                          555 Argyle
Molly Heuser Draught                            Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-8E4D-47EDD1E2A545

## ADDENDUM FOR 555 ARGYLE BIDDER TERMS AND CONDITIONS

THIS ADDENDUM FOR 555 ARGYLE BIDDER (the "Addendum") is made a part of that certain One to Four Family Residential Contract promulgated by the Texas Real Estate Commission (the "Contract") by and between Eric Terry, in his capacity as chapter 11 trustee (the "Trustee" or "Seller") for the chapter 11 cases of Christopher John Pettit ("Pettit") and Chris Pettit & Associates, P.C. ("CP&A," together with Pettit, the "Debtors"), and Edward Galt Steves and/or assigns (the "Buyer," together with the Seller, the "Parties"). In addition to the obligations of the Parties contained in the Contract, Seller and Buyer hereby agree as follows:

Promptly after entry into the Contract, the Trustee will proceed to file (i) Trustee's Motion for (I) Order Approving: (A) Bid Procedures, Including Approval of 555 Argyle Bidder; (B) Notice of Auction and Sale Hearing; and (C) Related Relief and for (II) Order (A) Approving the Sale of Real Estate Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), (h), and (m), 365, and 503; and (B) Granting Related Relief (the "Bid Procedures Motion") to be filed in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court"), and (ii) Order Granting the Bid Procedures Motion (the "Bid Procedures Order"). The Bid Procedures Motion will seek to establish dates, deadlines, and procedures related to (i) an auction (the "Auction"), (ii) a hearing (the "555 Argyle Hearing") to approve Seller's selection of a purchaser for the Property[1] ("555 Argyle Purchaser"), and (iii) a final hearing (the "Sale Hearing") to approve the sale of the Property, after which the Court will enter an order (the "Final Sale Order") approving the sale contemplated in the Contract.

Upon both (i) the full execution of the Contract and (ii) the Court's entry of the Bid Procedures Order (a) approving the Contract and (b) unconditionally establishing the Buyer as the 555 Argyle Purchaser, whether or not Buyer is the actual, eventual purchaser of the Property, a valid and binding contract shall exist.

1. **TERM; CONTRACT APPROVAL:**

    (a) The "Effective Date" of the Contract shall be the date the Contract is fully executed. The provisions in this addendum that are contingent upon the Court's entry of the 555 Argyle Approval Order will become effective on the first business day after the entry of the 555 Argyle Approval Order.

2. **PROPERTY:** Seller agree to sell to Buyer, and Buyer agrees to purchase from Seller, the property described in the Contract (the "Property").

3. **TITLE:** The title to the Property shall be free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363(f) of the United States Bankruptcy Code. For the purposed hereof, "Final Order" shall mean, with respect to the Final Sale Order, that (i) the time to appeal, seek certiorari, request reargument, or further review or rehearing (collectively, "Appeal") has expired and no Appeal has been timely filed, or (ii) any Appeal that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed,

---

[1] As described in Section 2A of the Contract.

ADDENDUM FOR 555 ARGYLE BIDDER TERMS AND CONDITIONS  PAGE 1

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

from which certiorari was sought, or to which the request was made, and no further Appeal has been or can be taken or granted.

4.    INSPECTION: Buyer may not perform any intrusive testing of the Property. Buyer shall indemnify Seller against all losses, damages, expenses, and claims that may arise by reason of any entry by Buyer or any agent, employee, or contractor of Buyer into and upon the Property for testing of the Property pursuant to this Section and shall repair any damage to the Property caused by such entry.

5.    INSPECTIONS; AS-IS, WHERE-IS: Buyer has previously inspected the Property and, by executing the Contract, affirms that it has approved all aspects of the Property. It is understood that Buyer will be relying solely on its independent inspections and evaluations of the Property in determining the Property's fitness for Buyer's intended use. The Contract is an arms-length contract between the Parties. THE PURCHASE PRICE WAS BARGAINED FOR ON THE BASIS OF AN "AS-IS, WHERE-IS, WITH ALL FAULTS" TRANSACTION AND REFLECTS THE CONTRACT OF THE PARTIES. THERE ARE NO REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES, EXCEPT THOSE IN THE CONTRACT AND THE CLOSING DOCUMENTS. AT CLOSING,[2] THE BUYER WILL ACCEPT THE PROPERTY IN ITS THEN CURRENT CONDITION. BUYER IS NOT RELYING ON ANY INFORMATION REGARDING THE PROPERTY PROVIDED BY ANY PERSON, OTHER THAN BUYER'S OWN INSPECTION AND THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT BUYER ACCEPTS THE CONDITION OF THE PROPERTY WITHOUT ANY IMPLIED REPRESENTATION, WARRANTY, OR GUARANTEE AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE AS TO THE CONDITION, SIZE, OR VALUE OF THE PROPERTY, EXCEPT ONLY AS MAY BE OTHERWISE EXPRESSLY PROVIDED IN THE CONTRACT. SELLER HEREBY EXPRESSLY DISCLAIMS ANY AND ALL SUCH IMPLIED REPRESENTATIONS, WARRANTIES, OR GUARANTEES, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE PROPERTY BEING SOLD, (B) THE SUITABILITY OF THE PROPERTY FOR ANY ACTIVITIES THAT BUYER MAY CONDUCT HEREON, (C) THE COMPLIANCE FOR THE PROPERTY WITH ANY LAWS, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL ENTITY, (D) COMPLIANCE OF THE PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INLCLUDING THE EXISTENCE IN THE PROPERTY OF HAZARDOUS MATERIALS, OR (E) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, EXCEPT AS SET FORTH IN THE CONTRACT.

6.    REPRESENTATIONS: Buyer acknowledges that neither Seller nor any party on Seller's behalf have made, nor do they hereby make, any representations as to the past, present, or future

---

[2] As contemplated in Section 9A of the Contract.

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

condition, income, expenses, operation, or any other matter or thing affecting or relating to the Property except as expressly set forth in the Contract.

7.     DEFAULT AND REMEDIES: Seller or Buyer shall be in default under the Contract if either fails to comply with any material covenant, agreement, or obligation within any time limits required by the Contract (a "Default" or "Defaults"). In the event of any purported default by Seller, Buyer must deliver a notice in writing to Seller specifying the default and affording Seller five (5) Business Days (as defined below) to cure (the "Cure Period"). Following Default by either Seller or Buyer under the Contract and after the expiration of the Cure Period as it relates to Seller, the other party shall have the following remedies:

(a)     If Seller Defaults, Buyer may either (i) cancel and terminate the Contract and receive a full refund of the Earnest Money,[3] or (ii) seek to enforce the order approving the sale through the Court.

(b)     If Buyer Defaults, Seller may terminate the Contract by written notice to Buyer and retain the Earnest Money as liquidated damages as Seller's sole remedy. The Parties hereby acknowledge that it would be extremely difficult to ascertain the extent of actual damages caused by Buyer's Default and that the Earnest Money represents a fair approximate of such actual damages.

(c)     If, as a result of an alleged Default under the Contract, either Seller or Buyer employs an attorney to enforce their rights, the non-prevailing party in the dispute shall, unless prohibited by law, reimburse the prevailing party for all reasonable attorneys' fees, court costs, and other legal expenses incurred by the prevailing party in connection with the Default.

8.     DISPOSITION OF EARNEST MONEY AND OTHER FUNDS AND DOCUMENTS: The Earnest Money shall be non-refundable upon entry of the 555 Argyle Approval Order and shall be paid to Seller in event of any termination of the Contract except as expressly set forth in (i) Section 7(a) herein or (ii) this Section 8 as follows:

(a)     The Earnest Money shall be held in a segregated account by the Title Company.

(b)     If the Buyer is not the Successful Bidder or the Back-Up Bidder (as those terms are defined in the Bid Procedures Motion), the Earnest Money shall be refundable and shall be returned to the Buyer no later than ten (10) days after the Sale Hearing.

(c)     If the Buyer becomes the Successful Bidder (as that term is defined in the Bid Procedures Motion), upon delivery of the special warranty deed (the "Deed") at Closing, the Earnest Money shall be credited against the Purchase Price.

(d)     If the Buyer is the Back-Up Bidder, the Earnest Money shall continue to be held by the Seller until the first to occur of: (i) ninety (90) days after completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Seller of the release by Seller of the Back-Up Bidder's obligations, and the

---

[3] As described in Section 5A of the Contract.

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

Earnest Money shall be promptly returned to the Buyer no more than ten (10) days afterward. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sales Transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Seller will be authorized to consummate the sale with the Back-Up Bidder, at which time, upon delivery of the Deed at Closing, the Earnest Money shall be credited against the Purchase Price. Additionally, the Earnest Money will become immediately non-refundable upon the Back-Up Bidder becoming the new Successful Bidder.

9.  REVERSAL ON APPEAL: If the Buyer is the Successful Bidder and pays the Purchase Price and if the Sale Order is reversed on Appeal and such reversal voids the sale to the Buyer, then the Buyer shall be entitled to a refund of the Purchase Price from the Seller.

10.  FIDUCIARY OUT: Notwithstanding any of the terms of the Contract or this Addendum, in the event that prior to the entry of the 555 Argyle Approval Order the Trustee determines in good faith, after consultation with counsel, that it is necessary to do so in order to comply with his fiduciary duties to the Debtors' bankruptcy estates, the Trustee may adjourn, withdraw, or modify the Bid Procedures Motion or otherwise elect not to seek Court approval of the Contract. In the event the 555 Argyle Approval Order is not entered as a result of the Trustee's failure to seek entry of such order pursuant to this Section 10 or otherwise, Buyer shall receive a refund of the Earnest Money and the Contract shall be of no force or effect.

11.  NOTICES: All notices required under the Contract shall be deemed to be properly served if reduced to writing and sent by (i) certified or registered mail; (ii) Federal Express or similar overnight courier; (iii) electronic mail; or (iv) personal delivery, and the date of such notice will be deemed to have been the date on which such notice is delivered or attempted to be delivered as shown by the certified mail return receipt or a commercial delivery service record, or in the case of electronic mail on the next business day after such electronic mail has been sent; provided, however, if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then such date or time period shall be extended until the next Business Day. All notices shall be address as follows, unless otherwise specified in writing:

**SELLER:**

Eric Terry, as Chapter 11 Trustee for the
Bankruptcy Estate of Christopher John Pettit
3511 Broadway
San Antonio, TX 78209
email: eric@ericterrylaw.com

With a copy to:
Wick Phillips Gould & Martin LLP
Attn: Scott Lawrence
3131 McKinney Ave., Suite 500
Dallas, TX 75204
email: scott.lawrence@wickphillips.com

and with a copy to:

Corie Properties Group
Attn: Fred Hutt
5800 Broadway, Suite 205
San Antonio, TX 78209
email: fred@corieproperties.com

ADDENDUM FOR 555 ARGYLE BIDDER TERMS AND CONDITIONS

PAGE 4

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

**BUYER:**

Edward Galt Steves
[ADDRESS]
email: [EMAIL ADDRESS]

With a copy to:

[BUYER'S COUNSEL & BUYER'S REAL
ESTATE AGENT]

12. **TIME AND EXACT PERFORMANCE ARE OF THE ESSENCE UNDER THE CONTRACT:** The Parties hereby agree to perform each and every obligation hereunder in a prompt and timely manner; provided, however, if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then the date or time period shall be extended until the next Business Day. As used herein, "Business Day" shall mean any calendar day other than a Saturday, Sunday, or Texas or Federal legal holiday.

13. ADDITIONAL TERMS:

(a) Permits and Approvals. Seller shall reasonably cooperate with Buyer in verifying any existing governmental approvals and in seeking and making any inquiries related to the Property, as reasonably determined to be necessary by the Buyer, provided such cooperation is at no cost or expense to the Seller. Seller makes no representations or warranties about the existence of or effectiveness of any governmental approvals.

(b) Assignment. Buyer may assign the Contract to any entity formed by Buyer for the purpose of taking title to the Property, provided the assignee assumes, in writing, all obligations and liabilities of Buyer under the Contract and has the same beneficial ownership as the Buyer, and with approval of the Court. Unless agreed by the Seller, Buyer shall not be relieved of any liability hereunder upon such an assignment.

(c) Miscellaneous. This Addendum shall be governed by, and construed and interpreted under, the laws and judicial decisions of the State of Texas. This Addendum and all covenants, terms, conditions, warranties, and undertakings contained herein, and all amendments, modifications, and extensions hereof, as applicable, shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, personal representatives, successors, and permitted assigns. This Addendum may be executed in multiple counterparts, each of which shall be deemed an original, but taken together shall constitute one instrument. Sole and exclusive jurisdiction over any disputes related to this Addendum and the Contract shall be in the Court.

(d) Conflicts of Provisions. THE PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT THE TERMS AND CONDITIONS OF THIS ADDENDUM SUPERSEDE ANY DIFFERENT OR INCONSISTENT PROVISION IN THE CONTRACT AND, AS A RESULT, IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS AND CONDITIONS OF THE CONTRACT AND THE TERMS AND CONDITIONS OF THIS ADDENDUM, THE TERMS AND CONDITIONS OF THIS ADDENDUM SHALL CONTROL.

14. **ENTIRE AGREEMENT AND MANNER OF MODIFICATION:** The Contract, and any attachments or addenda thereto, constitutes the complete agreement of the Parties concerning the

ADDENDUM FOR 555 ARGYLE BIDDER TERMS AND CONDITIONS

PAGE 5

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

Property, and supersedes all other agreements and may be modified only by both Parties initialing changes in the Contract or by written agreement. However, in the event of any conflict between the Contract and the Sale Order, the terms of the Sale Order shall prevail.

15.      NO RULE OF STRICT CONSTRUCTION: The Parties and their respective counsel have reviewed and jointly participated in the establishment of the Contract and the attachments or addenda thereto. No rule of strict construction or presumption that ambiguities will be construed against any drafter will apply, and no presumptions will be made, or inferences drawn because of the final inclusion of a term not contained in a prior draft of the final deletion of a term contained in a prior draft.

[Signatures on Following Page]



ADDENDUM FOR 555 ARGYLE BIDDER TERMS AND CONDITIONS                    PAGE 6

DocuSign Envelope ID: 57EB11F4-9C0C-46B4-BE4D-47EDD1E2A545

IN WITNESS WHEREOF, Seller and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLER:**                                              **BUYER:**

*Eric Terry*                    2/24/2024

ERIC TERRY, Chapter 11 Trustee for              EDWARD GALT STEVES
Christopher John Pettit and Chris Pettit &
Associates, P.C. in Case No. 22-50591           Date: 2/23/24
before the United States Bankruptcy Court
for the Westen District of Texas, San
Antonio Division.


Date: _____